**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 14-20750-CR-LENARD**

UNITED STATES OF AMERICA,

vs.

ALEJANDRO AMOR,

    Defendant.
_____/

## DEFENDANT AMOR'S MOTION FOR VARIANCE

Defendant Alejandro Amor ("Amor"), through his counsel, and pursuant this Court's further order on procedures for the sentencing hearing (DE # 402), files the instant Motion for Variance. In support, Amor states as follows:

### Relevant Law

When sentencing a defendant, a district court must consider all sentencing factors enumerated in 18 U.S.C. §3553(a). *United States v. Scott*, 426 F.3d 1324, 1329 (11th Cir. 2005). The §3553(a) factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed . . . (A) to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offenses, (B) to afford adequate deterrence to criminal conduct, (C) to protect the public from further crimes of the defendant, (D) to provide the defendant with the needed vocational and educational training or medical care; (3) the kind of sentences available; (4) the advisory guideline range; (5) any

pertinent policy statements issued by the Sentencing Commission;

(6) *the need to avoid sentencing disparities*; and (7) the need to

provide restitution to any victims of the offense.

18 U.S.C. §3553(a) (*emphasis added*).  While district courts must in all cases consider the advisory guideline range, the guidelines do not subordinate the other factors of §3553(a). *United States v. Booker*, 543 U.S. 220, 245-46 (2005).

This memorandum is a request motion for variance.  The Supreme Court has posited that reasonableness is the over-arching factor to determine a sentence and the advisory guidelines are only one element for determining reasonableness. *Kimbrough v. U.S.*, 552 U.S. 85, 90 (2007). Factors exist which merit a variance.

This Court has heard much negative testimony regarding FastTrain and Amor.  Indeed, much of the testimony came with questionable accuracy and truth.  For example, this Court observed the lack of credibility in Jose Gonzalez' testimony.  Other witnesses, like Caridad Perez, Juan Arreola or Luis Arroyo, who all suggested that over 90% of students attending did not have high school diplomas or that FastTrain was simply fabrication and not supported by the documentary evidence.  Even some of the 20 plus students admitted to having committed education fraud at other schools even before attending FastTrain.  The point of this discussion is to address the arguments that blindly generalize and exaggerate the size and scope of the alleged theft.  Further, much has been said about Alejandro Amor.  Amor's counsel attempted at trial to present countervailing information of the benefit of FastTrain to the overall student body.

**Amor's History and Characteristics and True Nature of Offense**

Alejandro Amor founded FastTrain in 1999. He started FastTrain based on suggestion from his mother, Ilda Amor, who was a lifelong educator (now 89 years old).[1] The elder Mrs. Amor recognized and instilled that education is not only a fundamental right but also a social equalizer allowing the impoverished to better their lives. With this tenet FastTrain served those that the traditional educational system had failed, these included the socio-disadvantaged the poor, the minorities and the disenfranchised. FastTrain College became the proverbial "fork-in-the-road" leading most students to gainful employment in the medical or information technology fields.[2] Alejandro Amor, himself, had taught information technology to adults on behalf of Miami-Dade County School Board.

FastTrain was recognized as providing quality education and implementing innovative programs to increase the likelihood of student success. These feats included being named school of the year by the Florida Association of Post-Secondary Schools and Colleges; having 5 or 7 campuses honored by the Accrediting Council for Independent Colleges, a national accreditor and Schools as schools of excellence; gaining member status into an educational think-tank (established in the 1940s)(BERA)[3] which consisted of a handful of leading institutions; and being honored by the Association of Proprietary Schools, Colleges and Universities as a leading

---

[1]     Mrs. Ilda Amor is now 89 years old and shows sign of senile dementia. She has suffered numerous falls during the past 12 months and is in need of adult supervision. Alejandro Amor is her only child and sole caretaker.

[2]     During opening and closing statements the government misrepresented trips to BERA (institutional think-tank) as lavish trips to Mexico and Cayman Island. In reality Mr. and Mrs. Amor (both school employees) flew in the day of the conference and flew out the day the conference ended. They decided to take their minor children with them since they had no one to oversee them. From 2008-2012 the Amor family did not take any vacation other than a long weekend. Whatsmore, and despite the government's insistence, Amor never went on a trip to London. Tickets were purchased and refunded, and the trip was never taken.

[3]     Over 12,000 students attended FastTrain. Glen Bogart, who was Amor's expert, testified at trial approximately 70% of students completed the FastTrain Program.

innovator. When research determined that transportation was the biggest hurdle in student completion, FastTrain implemented a free bus system to ensure students could attend. When a blind student needed special equipment, FastTrain purchased it for him. The student graduated and was placed in a job.

FastTrain provided student service above and beyond services provided by other institutions. These student services included placement services, transportation services, clothing (for interviews) and contracting with third party professions to employ a program to prevent student loan defaults so that no student would be burdened by debt that he or she could not afford to pay. Even when the United States Department of Education ceased funding FastTrain in May 2012, Amor continued to provide training to allow students to complete the semester and arranged for a majority of the students to continue their education at other institutions. FastTrain provided over $600,000 in training to students for which FastTrain was not reimbursed.

During the first 11 years of operations FastTrain operated without any regulatory or compliance issues. Then Arreola and his crew were hired in May of 2010. Mr. Arreola proceeded to hire or recommend a number of former colleagues and associates including Jose Gonzalez, Luis Arroyo and Juan Pena, to name a few of the eventual dozens. The government provided the defense evidence one week before the trial that at least one of the individuals had been committing Federal Student Aid fraud for at least 11 years with a number of schools in interviews with government agents. Juan Arreola and Luis Arroyo in interviews with government agents also confessed to having committed fraud at previous schools which employed their services including City College. Again, these cooperators provided false testimony before this Court. Others, like Mildred Ramos and Gelkys Chorens, testified that they

had no proof that Amor was involved in the false high school diploma practices of Arreola and his group.

Amor is horrified and ashamed that students he was trying to help better their lives were so negatively affected. At trial, Amor directed his counsel to inform the students who testified about the various default assistance programs available to them. Amor used various third party professionals to assist with school operations including financial aid processor (Weber and Associates), outside independent auditors (Knutte and Associates), compliance attorneys and a default management service (Pantheon) to assure students would not be burden by loans. The record also demonstrates that Amor put procedures in place in April 2012 to insure no ineligible students would be awarded Federal Student Aid (before the execution of the search warrant).

Amor is remorseful that his conduct or lack thereof caused irreparable damage to his students, his employees and his family. The result of this have has led to a subset of students being worse off financially then when they sought betterment. There is, however, a larger subset of students who did in fact graduated; were in fact placed in jobs and are or did in fact pay their loans back.

Amor now stands before the Court without a family as a result of this prosecution. His wife has commenced divorce proceedings. One of his two sons may have fallen to the evils of drugs. The real possibility exists that he will not be able to be the caretaker for his elderly mother suffering early stage of senile dementia.

**Disparities**

For those non-cooperating defendants -- Mssrs. Mincey and Grubbs – they received sentences for which the loss calculations were based on arbitrary numbers determined by the government which despite their conviction to a criminal conspiracy did not even begin to

5

approach the total number of loss attributable to the conspiracy.  Indeed, with Mr. Grubbs he pled guilty to a number under $1000.00 even though the PSR provides that the loss number directly attributable to him was much higher.   These disparities result in a direct unfairness that is not countenanced by Section 3553.  Notwithstanding, this disparity exists even with Mr. Mincey who was neither cooperator nor pled guilty.

WHEREFORE, Amor respectfully requests that this Court grant his request for variance.

Dated:  March 5, 2016.                           Respectfully submitted,


By:     s/ Alexander Angueira_____
        Alexander Angueira, Esq.
        Fla.Bar No. 0716091
        Alexander Angueira, P.L.L.C.
        7301 S.W. 57th Court, Suite 515
        Miami, FL  33143
        Telephone: 305.357.9031/Facsimile: 305.357.9050
        alex@angueiralaw.com

        *Attorney for Defendant Alejandro Amor*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of this document was served this 5th day of March, 2016 in accordance with the Federal Rules of Criminal Procedure via notice of filing that is automatically generated by ECF to those counsel or parties who are authorized to receive electronic Notices of Electronic Filing, to include without limitation the counsel listed on the attached Service List.

     s/ Alexander Angueira
ALEXANDER ANGUEIRA

**SERVICE LIST**

**UNITED STATES OF AMERICA v. ALEJANDRO AMOR
CASE NO. 14-20750 CR LENARD**

Amanda Perwin, Esq.
Fla. Bar No. 0046814
Assistant United States Attorney
United States Attorney's Office
Southern District of Florida
99 N.E. Fourth Street
Miami, Florida  33132

*Counsel for United States*